UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HAMID REZA SAYADI-
TAKHTEHKAR,

                Petitioner,

      v.

PAMELA BONDI, et al.,

                Respondents.

Case No.  1:26-cv-00152-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION[1]

(Doc. 2)

FIVE (5) DAY OBJECTION PERIOD

Before the Court is Petitioner Hamid Reza Sayadi-Takhtehkar's converted motion for preliminary injunction ("motion"),[2] filed in conjunction with his petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his ongoing detention in U.S. Immigration Customs and Enforcement ("ICE") custody.  (Docs. 2, 1).  For the reasons stated below, the undersigned recommends granting Petitioner's motion.

**I. BACKGROUND**

Petitioner is a native and citizen of Iran.  (Doc. 1 at 6).  In or around October 1996, Petitioner was convicted in the United States Court for the Northern District of Texas on four

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

[2] The district court converted Petitioner's motion for temporary restraining order into a motion for preliminary injunction and referred it to the undersigned.  (Doc. 5).

felony offenses including conspiracy to import more than one kilogram of heroin in violation of 21 U.S.C. § 963 (count one), conspiracy to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846 (count two), distribution of more than one gram of heroin and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i) and 18 U.S.C. § 2 (count four), and intimidation of a witness and aiding and abetting in violation of 18 U.S.C. §§ 1512(b)(1) and (2) (count five).[3] *See United States v. Saral et. al*., Case No. 5:96-cr-00041-H-BV, Crim. Doc. 297 (N.D. Tex.).[4]  In April 1997, Petitioner was sentenced to 365 months imprisonment on counts one, two, and four, and 120 months on count five, to run concurrently.  *See* Crim. Doc. 361.  On April 21, 2000, Petitioner was ordered removed from the United States pursuant to a final order of removal under 8 U.S.C. § 1228(b).  (Doc. 1 at 2, Doc. 1-1 at 1-2)

In December 2021, Petitioner was released from Bureau of Prisons custody and transferred to ICE custody in El Paso, Texas.  (*Id*. at 2; Doc. 13 at 2).  According to his verified Petition,[5] while detained in El Paso, Petitioner was taken by an ICE officer for an interview, at which time the ICE officer placed a phone call to an Iranian official at the Iranian Interest Section in Washington, DC.  (Doc. 1 at 2).  The Iranian official asked Petitioner if he had an Iranian

---

[3] In a footnote, Respondents ask the court "to take judicial notice of this record," presumably in reference to Petitioner's previous federal conviction and sentence.  (Doc. 13 at 2, n.1).  In general, "court filings and other matters of public record" are properly judicially noticed. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.2006); *see also Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388, fn.9 (9th Cir. 1987). Additionally, courts generally judicially notice other court proceedings "if those proceedings have a direct relation to the matters at issue." *United States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).  Regardless, the Court proceeded to verify the cited records and discovered that Respondents incorrectly identified the Eastern District of Texas as Petitioner's court of conviction, as opposed to Northern District of Texas, and incorrectly identified Petitioner's conviction as "in or around April 2017" (the date of judgment), as opposed to October 2016.  The Court finds it unnecessary to take judicial notice of Petitioner's previous federal court proceedings as they are readily available to the Court.  *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009). Moreover, the Court questions how Petitioner's criminal conviction and sentence is relevant to the revocation of his Order of Supervision almost 20 years later.

[4] The undersigned cites to the record in Petitioner's underlying NDTX criminal case as "Crim. Doc. _."

[5] Most of the facts articulated in this section come from Petitioner's verified petition, including attached declarations and exhibits. A court "may treat the allegations of a verified ... petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

2

passport, and Petitioner responded that he never had a passport and escaped Iran by fleeing to Austria. (*Id*. at 3). The Iranian official told him "Then there is nothing we can do to help you." (*Id*.). On March 25, 2022, Petitioner was released under an Order of Supervision because he could not be removed to Iran from the United States. (*Id*.; Doc. 1-2 at 3-9). Petitioner alleges he fully complied with the conditions of supervision, and he cooperated with ICE in all efforts regarding efforts to remove him to Iran. (Doc. 1 at 3).

On June 24, 2025, ICE officials arrested Petitioner at his home in Lubbock, Texas, and he was told they were going to try again to effect his removal to Iran. (*Id*. at 4). In or around September 2025, Petitioner was transferred to the Golden State Annex Detention Facility in McFarland, California. (*Id*.). On October 3, 2025, Petitioner was taken to an ICE office in Fresno, California for a custody review, and was told he would need to wait because ICE had to "make a decision today" and that the ICE official was "waiting on his boss in Washington to make a decision on Petitioner's case." (*Id*.). He received no response and was returned to the Golden State Annex Detention Facility. (*Id*.). On December 17, 2025, Petitioner spoke to his ICE deportation officer who responded that they were "still working on" getting a travel document from Iran, but so far had received no response, and if they did not receive a response, they would try to remove him to a third country. (*Id*. at 4-5). Petitioner is currently detained at the Golden State Annex Detention Facility. (*Id*. at 6).

On January 9, 2026, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1, "Petition") alleging that his continued detention in ICE custody is a violation of 8 U.S.C. § 1231(a)(6) and "the implementing regulations" because there is no significant likelihood his removal will be effected in the reasonably foreseeable future, and his prolonged detention is a violation of his substantive and procedural due process rights as ICE failed to follow regulations governing the revocation of his supervised release. (*Id*. at 16-23). On the same day, Petitioner filed the instant construed motion for preliminary injunction requesting that the Court order Respondents to release Petitioner from custody under an order of supervision pursuant to the relevant regulations, and enjoin Respondents from re-detaining Petitioner unless his re-detention is in compliance with the detention authority granted under § 1231(a)(1)(A) & (B) and the

3

governing regulations.  (Doc. 2-1 at 15).  On January 28, 2026, Respondents filed a 2- page opposition to the motion for preliminary injunction on the sole basis that that Petitioner is detained under 8 U.S.C. § 1231(a)(6) and Respondents have not been able to secure travel documents to effectuate Petitioner's removal to Iran.  (Doc. 13).  On February 3, 2026, Petitioner filed a reply.  (Doc. 14).

## II. APPLICABLE LAW AND ANALYSIS

Pursuant to Federal Rule of Civil Procedure 65, a court may grant a preliminary injunction to prevent immediate and irreparable injury.  Fed. R. Civ. P. 65(b).  A preliminary injunction is "an extraordinary remedy" and may be issued only if plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiff bears the burden of clearly satisfying all four prongs.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A preliminary injunction will not issue if plaintiff merely shows irreparable harm is possible – a showing of likelihood is required.  *Id.* at 1131.  However, under the "sliding scale" variant of the *Winter* standard recognized by the Ninth Circuit, "if a plaintiff can show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. For the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original); *Cottrell*, 632 F.3d at 1135.

### A.  Likelihood of Success on the Merits

"The first *Winter* factor, the likelihood of success on the merits, 'is a threshold inquiry and is the most important factor in any motion for preliminary injunction.'" *Doe v. Becerra*, ---F. Supp. 3d ---, 2025 WL 691664, at *3 (E.D. Cal. Mar. 3, 2025) (quoting *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023)).  Petitioner argues he is likely to succeed on his claims that Respondents failed to comply with their own regulations, and his detention after revocation of his release violated his procedural due process rights.  (Doc. 2-1 at 6-11).  Respondents' sole argument is the motion for preliminary injunction should be denied because Petitioner is subject

4

to 8 U.S.C. § 1231(a)(6), and they "have not been able to secure documents to effectuate Petitioner's removal to Iran."  (Doc. 13 at 2).

### 1.  Statutory and Regulatory Framework

The detention, release, and removal of noncitizens who are subject to a final order of removal is governed by 8 U.S.C. § 1231.  Pursuant to § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period') …. If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  § 1231(a)(1), (3); *see also* § 1231(a)(6) (certain inadmissible or criminal aliens, or those who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period under certain conditions, and "if released, shall be subject to the terms of supervision in paragraph (3).").  Pursuant to this mandate, regulations set forth in 8 C.F.R. § 241.13 and § 241.4 govern the release on supervision, and the revocation of release, of aliens subject to a final order of removal.[6]

Title 8 C.F.R. § 241.13 reflects the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country."  *Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86).  The Court held that detention under § 1231(a)(6) is limited to a presumptively reasonable period of six months, after which a noncitizen was entitled to release if

---

[6] Under § 241.13(i)(2), if an alien is not released from custody following the informal interview provided for in § 241.13(h)(3), as discussed *supra*, "the provisions of § 241.4 shall govern the alien's continued detention pending removal."  Here, Petitioner additionally argues his procedural due process rights were violated as Respondents did not provide him with the requisite procedure under based on 8 C.F.R. § 241.4, including failure to serve on Petitioner either the 90-day or 180-day post-order custody review decisions regarding his continued detention as required under § 241.4(h)(4).  As the Court recommends granting the motion based on the likelihood of success of Petitioner's claims regarding Respondents' failure to comply with § 241.13, the Court need not address Petitioner's separate argument based on § 241.4 at this time.

"it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701.  Accordingly, under § 241.13(i), release may be revoked if an alien violates the conditions of their release, or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2).  "Where, as here, petitioner was issued a final order of removal, detained, and subsequently released and then redetained, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed" pursuant to 8 C.F.R. § 241.13. *Martinez v. Bondi*, 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (collecting cases); *Huang v. Albarran*, 2026 WL 279888, at *4 (E.D. Cal. Feb. 3, 2026); *see also Vu v. Noem*, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025) ("The phrase 'significant likelihood,' as used in the regulation, requires something more than a mere possibility.").  Moreover, the regulations require ICE to notify the alien "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

### 2.  Analysis

In the instant motion, Petitioner argues (1) there is no significant likelihood that Petitioner's removal will be effectuated in the reasonably foreseeable future, and therefore Petitioner's continued detention "contravenes" his due process rights, and 8 U.S.C. § 1231(a)(6)[7]

---

[7] The first ground for relief in the Petition appears to allege, at least in part, that Petitioner's continued detention "is not authorized under 8 U.S.C. § 1231(a)(6)," as interpreted by *Zadvydas*, because the "six-month presumptively reasonable period for removal efforts has expired" and there is no significant likelihood his removal will be effected in the reasonably foreseeable future. (Doc. 1 at 16-18).  However, Petitioner does not specifically assert this argument in the instant motion for preliminary relief. Regardless, in light of the Court's conclusion that Respondents failed to comply with their own regulations implementing *Zadvydas*, and that Petitioner's detention after revocation of his release was in violation of his procedural due process rights, the Court declines to address any claim that his continued detention is

"and the implementing regulations" set out in 8 C.F.R. § 241.13, and (2) his continued detention in the absence of required procedural protections violates his Fifth Amendment due process rights. (Doc. 2-1 at 6-11). In response, Respondents assert only a cursory 2-sentence position that Petitioner's detention is subject to 8 U.S.C. § 1231(a)(6) as he is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II), and "Respondents have not been able to secure travel documents to Iran. Respondents are exploring removal to a third country, but no such country has been identified." (Doc. 13 at 2). Respondents attach two documents to their response: (1) a Form I-213, Record of Deportable/Inadmissible Alien dated June 24, 2025, and (2) a May 3, 2024 Order denying Petitioner's request to terminate supervision prior to original expiration date. (Docs. 13-1, 13-2). Respondents' argument is unavailing.

Here, it is undisputed that at the time of his re-detention Petitioner was on release under an Order of Supervision dated March 25, 2022. (Doc. 1-2 at 6-9). This type of release is made only after determination that "the alien would not pose a danger to the public or a risk of flight." 8 C.F.R. § 241.13(b)(1). Respondents offer no argument or evidence that Petitioner violated the conditions of his release, nor do they demonstrate any changed circumstances such that there is a significant likelihood, or indeed any likelihood at all, that Petitioner may be removed to Iran or an unidentified third country. *See* § 241.13(i). As alleged by Petitioner, ICE has been unable to obtain travel documents on his behalf despite his cooperation during two removal periods, and Respondents offer no evidence that Iran changed its 2022 decision that it will not issue a Travel Document for Petitioner because he fled Iran without an Iranian passport. (Doc. 2-1 at 9; Doc. 1 at 20). Thus, Petitioner argues there is no significant likelihood of his removal in the reasonably foreseeable future, which requires his release.[8] (Doc. 2-1 at 9). "Tellingly, when faced with … threadbare evidence of changed circumstances, many of our sister courts have concluded that the government failed to meet its burden under 8 C.F.R. § 241.13(i)(2)." *Sun v. Noem*, 2025 WL

---

not authorized by 8 U.S.C. § 1231(a)(6) at this time. If necessary, the Court may address this issue when considering the merits of the Petition.

[8] The Court is compelled to note that due to the recent escalation in the armed conflict with Iran after the filing of this action, as a practical matter it appears even less likely that Petitioner's removal to Iran could be accomplished in the reasonably foreseeable future.

7

2800037, at *3 (S.D. Cal. Sept. 30, 2025) ("The only argument Respondents now make for changed circumstances is that they are *preparing* to apply for the necessary documents to remove Petitioner.") (collecting cases); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have the attempted to show why obtaining a travel document is more likely this time around.  Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance.")

Furthermore, Petitioner contends he did not receive any of the procedural safeguards pursuant to § 241.13(i)(3) because ICE failed to provide written notice outlining the reasons for revoking Petitioner's Order of Supervision and failed to provide the informal interview "promptly" after his return to custody affording him the opportunity to respond to those reasons. (Doc. 2-1 at 10-11; Doc. 1 at 21-22).  In response, Respondents make no argument whatsoever as to whether or how they followed these procedures as required for revocation of supervised release under § 241.13(i)(3), and offer no evidence that Petitioner received notification of the reasons for revocation of his release or received an informal interview to respond to the reasons for revocation outlined in the notice.  (*See generally* Doc. 13).  "ICE, like any agency, 'has a duty to follow its own federal regulations. As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute … and [ICE} fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017); *V.K. v. Noem*, 2026 WL 246023, at *4 (C.D. Cal. Jan. 25, 2026) ("It is well-established that government agencies are required to follow their own regulations. To the extent Respondents failed to follow release revocation procedures, Petitioner's redetention is unlawful."); *Huang*, 2026 WL 279888, at *7 ("While the government has significant discretion to enforce immigration laws, it must do so consistent with the requirements of its own regulations and the Due process Clause.").

Based on the foregoing, on the record before the Court at this stage of proceedings, Petitioner has shown a likelihood of success as to his claims that Respondents failed to comply

8

with their own regulations, and his detention after revocation of his release was in violation of his procedural due process rights.

### B. Irreparable Harm

To prevail on a motion for preliminary injunction, the moving party must show that imminent, irreparable harm is likely in the absence of a court order. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994-95(citation omitted) (noting the irreparable harms imposed on those subject to immigration detention may include "subpar medical and psychiatric care in ICE," economic burdens on families, and collateral harm to the children of detainees); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure § 2948.1 (2d ed. 2004) ("When an alleged deprivation of a constitutional right is involved, most courts hold no further showing of irreparable injury is necessary."). Accordingly, given the Court's determination *supra* that Petitioner is likely to succeed on the merits of his due process claims, he has demonstrated that irreparable harm is likely in the absence of preliminary injunction.

### C. Balance of Equities and the Public Interest

The final two factors "merge when the Government is the opposing party." *Nken v. Holde*r, 556 U.S. 418, 435 (2009). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up). In contrast, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, as widely held by courts in this district and others under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Valencia Zapata*, 2025 WL 2578207, at *4; *see Singh v. Andrews*, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) ("Faced with … a conflict between

minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor.").

### D. Conclusion and Remedy

As discussed *supra*, the Court finds Petitioner is likely to succeed on the merits of his claim, immediate and irreparable injury is likely in the absence of an injunction, and the balance of equities and public interest weigh in favor of a preliminary injunction. Thus, the undersigned recommends granting Petitioner's motion for preliminary injunction.

The primary purpose of a preliminary injunction is preservation of the status quo pending determination of an action on the merits. *See, e.g., Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "The status quo ante litem is the last uncontested status which preceded the pending controversy." Hoac, 2025 WL 1993771, at *7 (citations omitted). Here, Petitioner challenges his current detention; thus, the last uncontested status of Petitioner before he was re-detained on June 24, 2025, and he is entitled to immediate release from detention and restoration of the conditions of his most recent order of supervision.

Accordingly, it is hereby **RECOMMENDED:**

1. Petitioner's Motion for Preliminary Injunction (Doc. 2) be **GRANTED** as follows:

   a. Respondents be directed to IMMEDIATELY release Petitioner from DHS custody on the same conditions of his most recent order of supervision.

   b. Respondents be ENJOINED from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

2. The bond requirement of Federal Rule of Civil Procedure 65(c) be waived. Courts regularly waive security in these cases. *See, e.g., Lepe v. Andrews*, 2025 WL 2716910, at *10 (E.D. Cal. Sept. 23, 2025).

10

3. Respondents be directed that they may file further briefing on the merits of the Petition within 30 days, or alternatively, a notice that they do not intend to file further briefing. And Petitioner be permitted to respond to any further briefing no later than 21 days thereafter.

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the urgency of a preliminary injunction, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id*.; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    March 4, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11